IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LISA J. JONES,<br><br>            Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | CASE NO. 5:24-cv-1690<br><br>DISTRICT JUDGE<br>JOHN R. ADAMS<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT & RECOMMENDATION** |

Plaintiff Lisa J. Jones filed a Complaint against the Commissioner of Social Security seeking judicial review of a decision denying her application for disability insurance benefits. Doc. 1. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural Background**

In October 2022, Jones filed an application for disability insurance benefits alleging a disability beginning in June 2022.[1] Tr. 170–71. In pertinent part, Jones alleged that she was disabled and limited in her ability work due

---

[1]        "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

to: "fibro," depression, anxiety, panic attacks, chronic pain, "siatic," knee, neck, and hips. Tr. 195. The Commissioner denied Jones's application initially and on reconsideration. Tr. 81, 96.

In February 2023, Jones requested a hearing. Tr. 100. In August 2023, Administrative Law Judge (ALJ) Mary Lohr held a telephonic hearing. Tr. 37. Jones appeared, testified, and was represented by counsel at the hearing. Tr. 39–53. Qualified vocational expect Lynn Smith also testified. Tr. 54–59. In September 2023, the ALJ issued a written decision, which found that Jones was not entitled to benefits. Tr. 8–25.

In October 2023, Jones appealed the ALJ's decision to the Appeals Counsel. Tr. 166. In August 2024, the Appeals Counsel denied Jones's appeal, Tr. 1, making the ALJ's September 2023 decision the final decision of the Commissioner, Tr. 8–25; *see* 20 C.F.R. § 404.981.

Jones timely filed this action in October 2024. Doc. 1. In it, she asserts four issues:

1. The ALJ erred at Step Five of the Sequential Evaluation when she found that Plaintiff could perform work at the light level of exertion.

2. The ALJ erred when she failed to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments and related limitations when forming the RFC.[2]

---

[2] An RFC is an "assessment of" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's

3.      The ALJ erred when she failed to support her conclusion regarding the opinion of the treating source with substantial evidence.

4.      The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Plaintiff's symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained basis.

Doc. 7, at 1.

**Evidence**[3]

*Personal, Educational, Vocational Experience*

Jones was born in 1973 and was 49 years old at the alleged onset date. Tr. 202. Jones completed high school and attended two years of college education. Tr. 196.

*Medical Evidence*

In April 2022, Jones underwent x-ray imaging of her thoracic spine, which showed "mild multilevel degenerative disc disease with facet arthropathy throughout the thoracic spine predominantly at T8–10.[4] Tr. 322.

---

"description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

[3]     The evidence summarized here is not intended to be exhaustive and is generally limited to the evidence discussed in the parties briefing.

[4]     Vertebrae in a person's spine are given letter and number designations according to their location. The neck—the cervical spine—has seven vertebrae designated as C1 through C7. *See* Thomas Scioscia, MD, Vertebrae in the Vertebral Column, Spine-health Resources, https://www.spine-

In June 2022, Jean Dib, M.D., Jones's primary care provider, treated Jones for right knee stiffness. Tr. 279. Dr. Dib prescribed pain medication and noted that Jones "need[s] disability. *Id.*

In August 2022, Dr. Dib continued to assess Jones with hypertension, post-traumatic stress disorder, diabetes, and obesity. *See* Tr. 271.

In August 2022, Nichael A. Necci, D.O. performed a total right knee arthroplasty on Jones to address her osteoarthritis in that knee. Tr. 332.

In an April 2023 follow-up appointment with Dr. Necci, Jones reported some improvement after therapy and Dr. Necci recommended that she "continue with home exercises and other conservative treatment modalities." Tr. 533.

In June 2022, Jones presented to CommQuest as a walk-in new patient seeking behavioral health treatment. Tr. 475. Jones described suicidal ideation after experiencing two car wrecks over the course of the previous six weeks. *Id.* Based on her initial assessment, Jones was diagnosed with major depressive disorder recurrent severe, PTSD, and generalized anxiety disorder Tr. 487.

---

health.com/conditions/spine-anatomy/vertebrae-vertebral-column [https://perma.cc/R9MM-TBZT]. The twelve vertebrae compromising the upper spine—the thoracic spine—are labeled at T1 through T12. *Id.* The five vertebrae in the lower spine—the lumbar spine—are L1 through L5. *Id.* The five vertebrae at the bottom of the spine—in the sacrum—are labeled as S1 through S5. Thomas Scioscia, MD, Sacrum (Sacral Region), Spine-health Resources, https://www.spine-health.com/conditions/spine-anatomy/sacrum-sacral-region [https://perma.cc/S2BR-RBTB].

In July 2022, Cleveland Clinic Mercy Pain Management examined Jones regarding her chronic pain. Tr. 453. Jones complained of pain radiating to both legs, "left more so than right," and right arm with numbness and tingling. *Id.* Jones was assessed with chronic pain syndrome, pain of both sacroiliac joints, cervicalgia, fibromyalgia, cervical post-laminectomy syndrome, obesity, and neuropathic pain. Tr. 456.

Later in July 2022, Jones received a lidocaine infusion and was instructed to repeat the infusion in the next four weeks, with a follow up with pain management in four to six weeks "for further plan of care and overall evaluation." Tr. 594.

In August 2022, Jones's underwent an MRI of her cervical spine. Tr. 497. The MRI showed no acute or structural abnormality. *Id.* at 497–98. There was some indication of "disc degeneration with central canal encroachment but without any spinal cord impingement or compression or any abnormal cord signal intensity." *Id.* at 497.

In November 2022, Jones exhibited cervical range of motion tenderness with extension and left lateral motion, lumbar range of motion with tenderness with flexion and extension, and good motion of right knee. Tr. 490. As of that appointment, Jones's diagnoses included lower back pain, thoracic pain, cervical pain, myofascial pain syndrome, status post anterior cervical discectomy and fusion C5-C7, chronic pain syndrome, bilateral foot pain,

COPD, restless leg syndrome, diabetes, hypertension, depression, obstructive sleep apnea, and fibromyalgia. Tr. 491.

In December 2022, Jones received additional lidocaine injections in her trapezius, levator scapulae, and semispinalis muscle groups to treat her chronic pain. Tr. 627.

In May 2023, Jones participated in a pain management appointment. Tr. 606. Jones rated her pain as a three or four out of ten and described increased pain with trigger point injections, but reported receiving an hour of relief from her most recent lidocaine infusion. *Id.*

In June 2023, Jones received a cervical epidural steroid injection for her cervical spinal stenosis and cervical spondylosis. Tr. 598. Jones was released in good condition and without any complications noted. *Id.*

*State Agency Reviewers*

In September 2022, Indira Jasti, M.D. opined that Jones: was limited to lifting or carrying 20 pounds occasionally, or 10 pounds frequently; limited beyond her lift and carry restrictions only in her ability to push and pull with her upper left extremity; could sit or stand for about six hours in an eight hour workday; limited to occasionally climbing ramps or stairs, stooping, kneeling, crouching and crawling; could frequently balance; and could never climb ladders, ropes, or scaffolds. Tr. 66–67. In January 2023, Rannie Amiri, M.D., generally affirmed these findings on reconsideration. Tr. 77. But Dr. Amiri

found that no limitations were warranted for Jones's right upper extremities. *Id.*

In October 2022, Karla Delcour, Ph.D., opined that Jones: was capable of simple, routine, and repetitive one- to two-step tasks; was capable of a static work environment without fast-paced production demands; needed to be able to receive assistance or guidance to complete tasks; and required any changes to be explained and presented in advance. Tr. 68–69. In January 2023, Audrey Todd, Ph.D., affirmed these findings on reconsideration. Tr. 78–9.

*Function Report*

In August 2022, Jones completed a function report in which she wrote that she could not lift or carry children, could not get up and down from the floor; did not get a full night's sleep; anxiety and panic attacks made her fear she would hurt a child; and "[i]t hurt to walking or helping children after 4 to 5 hours." Tr. 204. Jones also stated that she needed to have a total knee replacement. *Id.* She reported that throughout the day she would do yoga or stretch, watch television or read, and go to doctors' appointments. Tr. 205. She stated that she takes care of her pets by feeding, brushing, and bathing them. *Id.* She also noted that she lives with a roommate who will "do anything" Jones is physically unable to with regard to caring for her pets. *Id.* Jones reported that she needed help putting on her shoes and socks and could not stand long enough to cook. *Id.* Later, Jones wrote that she could prepare her own meals and did so daily. Tr. 206. She stated that it may take all day because she had to take breaks. *Id.* Jones described difficulty paying attention for longer than

30 minutes and that spoken instructions are easier to follow because she would need to reread written instructions and refer back to them. Tr. 209.

*Opinion Evidence*

In July 2023, Dr. Dib provided a medical source statement. Tr. 642–45. Dr. Dib opined that, based on Jones's impairments, Jones could sit and stand for 15 minutes at a time. Tr. 643. Dr. Dib also remarked that Jones would need to take half-hour unscheduled breaks every one to two hours due to her muscle weakness and pain. *Id.* Dr. Dib indicated that Jones could not push, lift, or carry anything over 10 pounds; she had "significant limitations" with reaching, handling, and finger; she would be off task 25% of the time, or more; and Jones's impairments are reasonably consistent with the symptoms and limitations provided in the opinion. *Id.* at 644–45.

*Hearing Testimony*

In August 2023, Jones testified at a telephonic hearing. *See* Tr. 37. Jones stated that she returned to part-time work during the week of her hearing. Tr. 43. She explained that she could not work full-time and that even part-time work was difficult. Tr. 48. Jones recalled that when she last attempted part-time employment, she missed almost one day every week. Tr. 49. Jones stated that when she did go to work, she would be "drained" and "would sleep for three or four hours afterwards." Tr. 50.

Jones described having pain in her neck and arms every day and that she "sometimes" had headaches and her hands or fingers would go numb or

8

tingle. Tr. 50–51. She explained that she sometimes had difficulty using her hands to open things, like bottles at work, and with "lifting things a proper way." *Id*. Jones reported having to asker her roommate to help her dress "a few times because of either not being able to get something on or not being able to get my arms to reach it properly. Not being able to feel things right and can't get them zipped up or socks on or sometimes even my shoes on." Tr. 52.

Jones described that she has panic attacks at least once a month. Tr. 52. She also stated that she has difficulty sleeping, which affects her ability to focus and concentrate. Tr. 53.

*Vocational expert*

Qualified vocational expert, Lynn Smith, opined that Jones had past work experience as a preschool teacher, assembler, and machine operator. Tr. 54–55. In response to the ALJ's first hypothetical, which generally described an individual capable of light work with additional limitations, Smith opined that the hypothetical individual could not perform any of Jones's past work, but could work as a mail clerk, price marker, or office helper. Tr. 55. Smith opined that if the hypothetical individual were further limited to only work at the sedentary level of exertion, then the hypothetical individual could perform jobs as a weight tester, ticket checker, or polisher. Tr. 56.

**ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2.   The claimant has not engaged in substantial gainful activity since June 1, 2022, the alleged onset date (20 C.F.R. 404.1571 *et seq*.).

3.   The claimant has the following severe impairments: obesity; degenerative disc disease of the cervical, thoracic, and lumbar spine; meniscus tear of the knee, status-post total knee replacement; chronic pain syndrome/fibromyalgia, depression; anxiety; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 40, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can frequently balance and stoop, and occasionally kneel, crouch, and crawl. She can never work at unprotected heights or around moving mechanical parts. The claimant can perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g., assembly line work). She can have occasional interaction with supervisors, co-workers, and

the public. She can tolerate few changes in a routine work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 25, 1973, and was 49 years old, which is defined as a younger individual 18–49, on the alleged disability onset date. The claimant subsequently changed age category to loosely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education. (20 CFR 1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR. 82-41 and 20 CFR Par 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number sin the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 20212, through the date of this decision (20C R 1520(g)).

Tr. 13–16, 20, 21.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.  Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.  Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.  Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.  What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.  Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the

burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### Standard of Review

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

> *1. The ALJ appropriately considered Jones's claim at Step Five of the Sequential Evaluation.*

Jones first alleges that that ALJ erred at Step 5 of the sequential evaluation when she found Jones capable of performing light work. Doc. 7, at 8.  For starters, this issue statement mis-states the level of work that the ALJ determined that Jones could perform. The ALJ found Jones capable of performing light work, but also included several functional limitations. *See* Tr. 15–16.

That said, Jones confusingly begins her argument by articulating the general requirements for *Step 4* of the sequential evaluation. Doc. 7, at 8. She then details the general standards governing the ALJ's consideration of the record at Step 5. *Id.* at 9. Specifically, Jones points out that ALJ must support

14

her Step 5 findings with substantial evidence, which may come in the form of the vocational expert's testimony if that testimony is in response to a question that accurately portrays the claimant's mental and physical impairments. *Id.* at 9. She does not at any point in her briefing, however, argue that the ALJ improperly considered the vocational expert's testimony. *See generally* Doc. 7. So that potential argument is forfeited. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (internal citations omitted).

Ultimately, Jones proposes that what is really at issue is "whether she would be limited to work at the sedentary level of exertion." *Id.* at 9. While this might be an issue Jones would like the Court to consider, it is not found anywhere in Jones's issue statements and, thus, is not properly presented. *See* Doc. 4, at 3 ("Each introductory heading in the Argument or Analysis section of a brief must correspond to the argument presented under the heading. Failure to comply with this requirement may result in (a) waiver of the arguments in the heading and in the text following the heading … . Similarly, bald assertions of error—those unsupported by explanation and argument— will be deemed waived.").

15

The stream of thought originating from this allegedly relevant issue, however, leads Jones to make what appears to be her actual argument: "[t]he ALJ's finding that [she] could engage in full-time substantial gainful activity at the light level of exertion was not supported by substantial evidence necessitating a reversal or remand of this matter." Doc. 7, at 10. Jones then recites nearly two pages of medical evidence and ultimately concludes, without explanation, that "these limitations were erroneously excluded from the ALJ's consideration as to whether Plaintiff could engage in substantial gainful activity on a full-time and sustained basis." Doc. 7, at 12.

Jones's first argument is conclusory and unsupported by the record. Jones merely provides an alternative interpretation of the record and concludes that, since the ALJ did not reach her desired conclusion, the ALJ erred. Doc. 7, at 12. Jones provides no explanation of what she means by "these limitations." *Id.* The Court will not guess at what limitations Jones believes the preceding two pages of out-of-context record citations support. Jones also provides no support for her conclusory statement that the ALJ "ignored" the evidence she cites in her briefing. *See id.* at 12. The ALJ said she considered all of the record evidence and Jones does nothing to refute the ALJ's statement. Absent evidence to the contrary, the Court will presume that this statement is true. *See NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 163 (2d Cir. 2021); *see also United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in

16

the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.").

Additionally, as the Commissioner identifies, the ALJ did not fail to consider evidence and Jones's briefing ignores evidence that contradicts her argument. *See* Doc. 8, at 6–7; Tr. 17–18 (discussing Jones's knee, back, and neck pain along with her fibromyalgia and other conditions); *see also* Doc. 7, at 10–11 (omitting evidence discussed by the ALJ related to Jones's normal gait without assisted devices and unremarkable MRI findings).  Jones is not only asking this Court to do precisely what she alleges the ALJ improperly did, i.e. ignore contradictory evidence, but she also asks the Court to reweigh the evidence, which is not the Court's role. 20 C.F.R. § 404.1520c(a) (explaining how *the ALJ* will consider and weigh medical opinions and prior administrative medical findings); *see also Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 196 (6th Cir. 2020)) ("this court does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job."). Jones's first issue thus lacks merit and provides no basis for remand.

### 2. The ALJ properly applied relevant Social Security Rulings and considered Jones's conditions when forming Jones's RFC.

Jones next asserts that the ALJ erred by failing to discuss certain Social Security Rulings or consider certain evidence of Jones's impairments. *See* Doc. 7, at 12–16.

Jones initially claims that the ALJ neglected to discuss or consider evidence related to Jones's fibromyalgia or Social Security Ruling 12-2p, which

17

deals with how ALJ's evaluate cases involving fibromyalgia. *Id.* at 12; *see id.* at 13 ("The ALJ erred in failing to consider the medical evidence documenting Plaintiff's symptoms related to her fibromyalgia"). She makes a similar claim with respect Jones's obesity and Ruling 19-2p, which concerns how ALJ's evaluate cases involving obesity. *Id.* at 14. A fatal flaw in Jones's argument is that it is belied by the ALJ's decision. The ALJ explicitly cited Ruling 19-2p and discussed Jones's obesity. *See* Tr. 14, 18–19. And she discussed Jones's fibromyalgia and evidence related to it. Tr. 16–18  Further although the ALJ did not expressly mention Ruling 12-2, Jones points to no rule or case that would have required the ALJ to explicitly cite or separately discuss that Ruling. *See* Doc. 7, at 12–16.

As Jones points out, the ALJ should consider the longitudinal record when considering a claimant's fibromyalgia. Doc. 7, at 13. But it's unclear from Jones argument how it is that she believes the ALJ failed to consider the longitudinal record. After noting this requirement, Jones recites evidence of her depression, anxiety, and PTSD and says that the ALJ failed to consider this evidence. *Id.* at 13. But the ALJ didn't doubt that she had these impairments. Indeed, she found that Jones's depression, anxiety, and PTSD were severe impairment, that "significantly limit[ed] [Jones's] ability to perform basic work activities." Tr. 13–14. And the ALJ considered evidence related to these impairments. *See* Tr. 18.

18

Further, even if this weren't the case, a duty to "consider" the evidence is different from a duty to "discuss" the evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (quoting *Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). The ALJ stated that she considered the entire record and Jones hasn't shown that the ALJ didn't consider Jones's conditions of fibromyalgia and obesity. *See Newark Elec. Corp.*, 14 F.4th at 163. Additionally, the ALJ's decision illustrates that she did consider the entire, longitudinal record of medical treatment, specifically Jones's fibromyalgia and obesity, when crafting Jones's RFC. *See e.g.*, Tr. 16–18 (discussing medical evidence related to Jones's treatment for fibromyalgia and obesity and explaining the limitations related to each).

As to Jones's obesity, she admits that Ruling 19-2, related to obesity, "does not direct a particular evaluation of the evidence." Doc. 7, at 14. She then makes the bald, unsupported assertion that the ALJ "erroneously discounted the combination of Plaintiff's obesity and how it affected the remainder of her impairments.," *Id.* But Jones makes no effort to explain how the ALJ allegedly erred. So this argument—if it is one—is forfeited. *See McPherson*, 125 F.3d at 995.

Jones next challenges the ALJ's consideration of the medical evidence related to Jones's psychological and physical conditions, asserting that the

19

ALJ's RFC "failed to account," in contravention of Social Security Ruling 96-8p, "for any limitations which did not comport with the ALJ's desired finding that Plaintiff was not disabled." *See* Doc. 7, at 15. This assertion is impossible to square with the ALJ's decision which took account of Jones's impairments. Tr. 16–18.

Further, in making her argument, Jones simply introduces evidence that she apparently believes supported greater limitations than those found by the ALJ and asks this Court to agree with her interpretation of the record. *Id.* at 15. Simply because Jones can point, however, to evidence that may support her desired outcome does not mean the ALJ erred. *See Jones*, 336 F.3d at 477. And it is not the Court's role to re-weigh the evidence Jones cites. *See* 20 C.F.R. § 404.1520c(a) (explaining how *the ALJ* will consider and weigh medical opinions and prior administrative medical findings); *see also Rottmann*, 817 F. App'x at 196 ("this court does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job."). As explained earlier, nothing in the Jones's brief demonstrates that the ALJ failed to consider the combined effect of her conditions. *See Kornecky*, 167 F. App'x at 508.

Jones concludes this section of her argument by claiming that the ALJ "erroneously did not build an accurate and logical bridge between the evidence documenting Plaintiff's disabling problems and the ALJ's decision to deny benefits." Doc. 7, at 16. Jones, again, provides no support or explanation for

this assertion. It is thus forfeited. *McPherson*, 125 F.3d at 995–96. Jones's second issue lacks merit and provides no basis for remand.

### 3.   Substantial evidence supports the ALJ's  conclusions with regard to the opinion evidence of record.

Jones's third issue is difficult to decipher but seems to be about the ALJ's consideration of Dr. Dib's opinion. Jones begins by citing 20 C.F.R. § 404.1520c, which describes how an ALJ will "consider medical opinions and prior administrative medical findings." Doc. 7, at 16. And she notes that the regulation lays out factors that an ALJ must consider, of which supportability and consistency are the most important. *Id*.; *see* 20 C.F.R. § 404.1520c(b)(2).

Next, she says that the ALJ's decision to discount Dr. Dib's opinion "was neither supported by nor consistent with the medical documentation." Doc. 7, at 17–18. This assertion appears to evidence some confusion about how the regulation is applied. The regulation does not impose a requirement regarding what evidence the ALJ must describe to support her findings about each medical opinion. Instead, it provides factors that an ALJ must consider when evaluating the persuasiveness of a medical opinion. As noted, Section 404.1520c requires the ALJ to consider the factors of *supportability* and *consistency* in that evaluation.

In this regard, the Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §

21

404.1520c(a), (c)(1)–(5). Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 404.1520c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 404.1520c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id.* "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

Rather than argue that the ALJ failed to discuss either of these required factors when evaluating the medical opinions, Jones appears to advance the same argument generally underlying her briefing—that the ALJ's decision is unsupported because Jones can point to evidence that, in her opinion, supports

22

a different conclusion. *See* Doc. 7, at 16–19. Further showing that Jones is not actually raising an argument under Section 404.1520c, Jones asserts that *the ALJ's* statements were "neither supported by nor consistent with the medical documentation" and claims that the ALJ's analysis of the medical opinion evidence was otherwise "inadequate." Doc. 7, at 18.

In other words, Jones does not discernably challenge whether the ALJ's evaluated the mandatory *supportability* or *consistency* factors; instead, she argues that the ALJ's own analysis lacked support. But the fact that Jones points to evidence that she believes contradicts the ALJ findings does not mean the ALJ erred. *See Jones*, 336 F.3d at 477 (even if a claimant can show substantial evidence in support of their position, the ALJ's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ").

To be sure, the ALJ did address the supportability and consistency factors when she considered the medical opinions of record. *See* Tr. 18 (discussing Dr. Dib's opinion and finding that it is "not supported by the medical evidence, including Dr. Dib's own treatment notes" or the "balance of the record"); *id.* (finding the state agency psychological examiner's findings generally persuasive based on record support but not fully persuasive because the paragraph B findings are "at odds with their narrative opinion").

As a final argument, to the extent it could be construed as one, Jones appears to challenge the ALJ's evaluation of the state agency consultant's

opinions. Doc. 7, at 19. In doing so, however, Jones's provides only the conclusory assertion that "the ALJ failed to support her findings and note the medical evidence which supported each opinion." *Id.* Jones provides no record or case support for this apparent argument, so it is forfeited. *McPherson*, 125 F.3d at 995. Jones's third issue is, thus, meritless and provides no basis for remand.

### 4. *The ALJ complied with Social Security Ruling 16-3p and appropriately considered Jones's subjective complaints.*

As her fourth and final issue, Jones argues that the ALJ failed to consider several of the factors listed in Social Security Ruling 16-3p when evaluating Jones's subjective symptom complaints. *See* Doc. 7, at 20.

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ considers medical evidence, the claimant's statements, other information provided by medical sources, and any other relevant evidence in the record. *See* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017); 20 C.F.R. § 404.1529. Other relevant evidence includes: daily activities; the location, duration, frequency, and intensity of pain or symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication, to relieve pain; any measures used to relieve pain; and "[o]ther factors concerning … functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). "The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence." *Hatcher v.*

24

*Berryhill*, No. 1:18-cv-1123, 2019 WL 1382288, at *15 (N.D. Ohio Mar. 27, 2019) (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)).

The ALJ complied with Ruling 16-3p when she evaluated Jones's subjective symptom complaints. *See e.g.*, Tr. 17–18 (evaluating the effect of Jones's orthopedic conditions and pain syndromes in relation to her activities of daily living and improvement with treatment and explaining how the limitations provided address Jones's complaints). Review of Jones's own argument reveals that she tacitly concedes that the ALJ considered her subjective complaints, albeit not in the manner that Jones preferred. *See* Doc. 7, at 21 (claiming that the ALJ "discounted [her] complaints as not being consistent with the medical evidence which supported [Jones's] testimony."). Jones recounts the medical evidence that she believes supports her perspective that her symptom complaints were consistent. *See* Doc. 7, at 21–23. But, as discussed in relation to her earlier arguments, Jones's citation to evidence that she believes supports a different outcome is of little relevance to this Court's review. *See Jones*, 336 F.3d at 477.

Ultimately, Jones concludes that the ALJ's analysis was insufficient under Ruling 16-3p and that "ALJ failed to articulate any supportable rationale for her finding that [Jones's] statements were not entirely consistent with the medical evidence." *Id.*, at 24. But the ALJ did explain why she found Jones's subjective symptom complaints not entirely consistent with the

25

medical evidence. *See e.g.*, Tr. 17 (explaining that Jones's "claims of extreme pain [are] less persuasive" based on her displayed normal gait and ease of movement and her described daily activities). Jones also asserts that the ALJ failed to support her conclusions related to Jones's symptom complaints with substantial evidence. Doc. 7, at 24. But Jones fails to support her conclusory assertion with any citation to the ALJ's decision. *Id.* (omitting any citation to the ALJ's decision). So, these final arguments are not only meritless, but also forfeited. *McPherson*, 125 F.3d at 995.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: April 28, 2025

  */s/ James E. Grimes Jr.*
  James E. Grimes Jr.
  U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).